(Nos. 83-CC-2353, 83-CC-2354, 83-CC-2355 cons.—

CAPITOL CLAIM SERVICE, INC., as Assignee or Agent for S. B. Rawls Mortuary *et al.*, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed February 25, 1988.*

SAMUEL J. CAHNMAN, for Claimant.

JAMES RADAR, for Respondent.

PATCHETT, J.

These three consolidated causes are before the Court on Respondent's motion to dismiss, filed in April 1986. Due notice having been given, and the Court, being fully advised, finds as follows:

The three actions present common issues of law and fact, relating to vendor-payment claims, filed pursuant to section 11—13 of the Public Aid Code (Ill. Rev. Stat., ch. 23, par. 11—13), by Capitol Claims Service, Inc., as assignee of accounts-receivable of certain funeral home and cemetery vendors. Together, these actions present 25 accounts, each for funeral or burial services (and related goods) furnished in behalf of persons who, at the time of their deaths, were public aid recipients. The Illinois Department of Public Aid (IDPA), in its departmental report filed herein pursuant to sections 790.100 and 790.140 of the rules of this Court (74 Ill. Adm. Code 790.100, 790.140) denies all payment liability with respect to these 25 accounts.

The Public Aid Code includes certain provisions, e.g., sections 3—8, 5—12, 6—6 and 7—5, relating to Respondent's, and IDPA's, obligation to provide funerals, burial space and interment for deceased IDPA recipients. (Ill. Rev. Stat. 1979, ch. 23, pars. 3—8, 5—12, 6—6, 7—5.) Section 5—12 is an example of such provisions:

"Funeral and Burial. Upon the death of a recipient ° ° °, if his estate is insufficient to pay his funeral and burial expenses and if no other resources, including assistance from legally responsible relatives, are available for such purposes, there shall be paid, in accordance with the standards, rules and regulations of the Illinois Department, such reasonable amounts as may be necessary to meet costs of the funeral, burial space, and cemetery charges, or to reimburse any person not financially responsible for the deceased who have voluntarily made expenditures for such costs."

In its report, IDPA emphasizes that Respondent's payment obligations are contingent, in each instance, upon the vendor's complying with the Department's "standards, rules and regulations" and the other conditions referred to in the statutes. This opinion addresses the merits of these vendors' 25 accounts, and the extent of the vendors' compliance with such statutory and regulatory requirements. In considering these accounts, we refer to them by use of the account numbers assigned by IDPA in its March 5, 1986, report.

### Required Exhaustion Of Third-Party Resources

As previously noted, IDPA's payment obligation for funeral and burial expenses is contingent, under applicable statutes, upon a determination by the Department that "no other resources, including assistance from legally responsible relatives, are available" to pay such expenses. (Ill. Rev. Stat. 1979, ch. 23, par. 5—12.) When such resources exist, IDPA Rules 117.53 and 117.54 require that reductions be made against vendors' charges (subject to "maximum allowable" charges established in section 117.50) for the value of decedent's assets, available resources including both insurance proceeds and any other anticipated death benefits available to the estate, and amounts paid or arranged to be paid by the decedent's legally responsible relatives. (89 Ill. Adm. Code 117.53, 117.54; formerly Rule 7.13). The resulting policy is analogous to the requirement of this Court in section 25 of the Court of Claims Act (Ill. Rev. Stat., ch. 37, par. 439.24—5) and section 790.60 of the rules of this Court (74 Ill. Adm. Code 790.60), that all administrative remedies and sources of recovery be exhausted before any State liability can be determined to exist. *Boe v. State* (1984), 37 Ill. Ct. Cl. 72; *Lyons v. State* (1981), 34 Ill. Ct. Cl. 268.

IDPA identifies five accounts (nos. 17, 18, 19, 20 and 21 as listed in its departmental report) for which it had denied payment liability due to the availability of life insurance on the decedents' lives, the proceeds of which were in excess of the maximum allowable amounts otherwise available (under IDPA Rule 117.50) under the Department's allowance for funeral and burial expenses of deceased public aid recipients. In each instance, the insurance policy or policies would have produced benefit payments sufficient to pay the charges as submitted by the funeral home and cemetery vendors to IDPA.

In five instances, account nos. 14, 20, 21, 22 and 25, IDPA made payment to the vendors in amounts less than their charges, as a result of having reduced such charges by the amount of a lump-sum death benefit which the decedents' estates were entitled to receive under the Federal Social Security Act. In another instance, account no. 13, the decedent had been a nursing home resident and had left a personal fund trust account balance with the nursing home which, when combined with IDPA's payment, would equal the vendors' charges for the decedent's funeral and burial.

With respect to account 9, a person (other than a legally responsible relative of the decedent) had filed a claim with IDPA for reimbursement for funds expended by that person for the costs of the decedent's funeral and burial, pursuant to IDPA Rule 117.54 (89 Ill. Adm. Code 117.54). The vendor was so notified by IDPA, and did not thereafter pursue payment from the Department. In another case (account 11), the same vendor invoiced its entire charge to IDPA, without crediting the payment which it had received from the decedent's legally responsible relative. IDPA rejected its claim for that

reason in July 1982, and the vendor failed thereafter to submit a corrected bill of its charges within the time permitted by IDPA Rule 117.55(c)(2) (89 Ill. Adm. Code 117.55(c)(2), formerly Rule 7.13). The vendor had been paid in full for account 5, over two months prior to the filing of the claim in No. 83-CC-2353.

In each case where existing resources were available (nos. 13, 14, 17, 18, 19, 20, 21, 22 and 25), such resources were sufficient, alone or when combined with IDPA's payments, to make available the maximum allowable amounts authorized by IDPA's program.

### Proper Claim-Form Preparation

Funeral home, cemetery and other vendors are instructed to invoice their funeral and burial claims to IDPA, using Department invoices (here, form DPA 29) designed specifically for that purpose. In doing so, they are to complete the claim form in accordance with instructions appearing on the reverse side of the form. Accounts 1, 4, 6, 7, 12 through 15, and 16 (no claim was ever received by IDPA for the latter account) are among the examples cited by the Department of claim forms not prepared by the vendors in compliance with such instructions.

These instructions require the vendor who actually rendered the services to be identified by name, address and Federal employer identification number, and for such vendor to sign and date the claim form being submitted. Vendors are not free to disregard these instructions by omitting required entries on the form, by substituting as vendor the name of a person or firm who did not render the service, or otherwise by failing clearly to identify the person or firm who actually rendered the service and is entitled to payment for it. Each entry is to

be completed as instructed, so that Respondent's officials may be assured that the proper vendor will be paid for that vendor's services.

Details of these vendors' departures from the instructions are noted in IDPA's report. For example, the purported assignments of ownership of these accounts could have been accomplished by a separate document submitted with the claim, and did not excuse the preparer from fully identifying the vendor on the form itself, in compliance with related instructions. As to each of the nine accounts referenced above, we find that the vendors failed to comply with such instructions and IDPA Rule 117.55.

### Vendor Disqualified From Rendering Services

IDPA denies all liability for the funeral and embalming services as represented in accounts 1 through 8 (except account 5 which was paid), because the vendor's licenses to perform such survices had been suspended for cause, effective July 21, 1982, pursuant to sections 1—14 and 2—10 of the Funeral Directors and Embalmers Licensing Act of 1935 (Ill. Rev. Stat. 1981, ch. 111, pars. 2813, 2824). All of these services, as invoiced, were performed during the six-month period when this vendor's licenses were under suspension. The vendor was thus prohibited by law from engaging in the occupations of funeral directing and embalming during this period.

The Court agrees with the Department's refusal of payment for these services, and finds the denial of liability to be mandated by law. Respondent's suspension of the vendor's licenses meant that he had no certificate of State registration to engage in these occupations during the suspension period. His continued

practice of such activities without State authority was thus unlawful. (Ill. Rev. Stat. 1981, ch. 111, pars. 2803, 2816.) Moreover, the vendor, having failed to comply with licensing requirements applicable to his occupations, may not maintain an action for payment of his services rendered while his licenses were under suspension. *Tovar v. Paxton Community Memorial Hospital* (1975), 29 Ill. App. 3d 218, 330 N.E.2d 247.

### Noncompliance With IDPA's Invoicing Deadlines

IDPA Rule 117.55 (89 Ill. Adm. Code 117.55) requires that vendors' funeral and burial claims be received by the Department within 180 days following a decedent's death in order to be entitled to payment consideration. IDPA denies liability as to accounts 1, 10, 16, 23 and 24, by reason of the vendors' failures to comply with this invoicing deadline. Account 23 involves funeral services performed in 1974 and account 24 presents a claim for 1975 funeral services. Yet the vendor's Court complaint allegations indicate that these two accounts were first invoiced to IDPA in 1982.

IDPA Rule 117.55 also provides that, for payment consideration, the rebill invoice of a previously invoiced account must be received within 90 days after the vendor's initial invoice was disallowed and returned for correction or completion. IDPA denies liability as to accounts 9, 10, 11, 12, 15, 16, and 18 through 22, due to vendors' failures to comply with this rebill deadline.

Section 11—13 of the Public Aid Code (Ill. Rev. Stat. 1983, ch. 23, par. 11—13) provides that a vendor's right to a vendor payment may be "limited by [IDPA's] regulations." We have previously recognized such limitations. See, *e.g., Riverside Medical Center v. State* (1986), 39 Ill. Ct. Cl. 301, and the decisions therein

referred to, as they relate to the initial invoice and rebill deadlines imposed by IDPA's rules upon another category of vendors. We find that Rule 117.55's deadlines, applicable to funeral and burial vendors' claims in behalf of deceased public aid recipients, are entitled to similar recognition and enforcement. And we find that IDPA was correct in refusing payment to those vendors whose accounts are identified as nos. 1, 9, 10, 11, 12, 15, 16, and 18 through 24.

### Court Actions Barred by Section 439.22's Time Limitation

Section 11—13 of the Public Aid Code also imposes limits on the time within which those seeking vendor payments must commence their actions before this Court, in order to avoid the one-year bar provided for in section 22 of the Court of Claims Act. (Ill. Rev. Stat., ch. 37, par. 439.22; *Methodist Medical Center v. State* (1983), 35 Ill. Ct. Cl. 871, 872.) IDPA contends that vendor Rawls Mortuary's actions on account nos. 10 and 12 (a part of No. 83-CC-2353) were barred by this statutory limitation.

The dates pertinent to these accounts are as follows:

| Account/ Dates of Service | Date of IDPA's written notice to vendor, refusing payment of initial invoice-claim |
| --- | --- |
| 10. for decedent-recipient Retic DOS: October 15, 1980 | June 24, 1981 |
| 12. for decedent-recipient Smith DOS: June 26, 1980 | October 21, 1980 |

The Court claim which included these accounts was not commenced until May 16, 1983, more than one year following IDPA's initial disallowance of the vendor's administrative claims.

At the time No. 83-CC-2353 was filed, section 11—13 of the Public Aid Code provided as follows:

"[v]endors seeking to enforce obligations of * * * [IDPA] for goods or services (1) furnished to or in behalf of recipients and (2) subject to a vendor payment as defined in Section 2—5, shall commence their actions * * * within one year next after the cause of action accrued." (Ill. Rev. Stat. 1983, ch. 23, par. 11—13.)

A vendor's cause of action accrued upon IDPA's written notification to him that his claim (invoice seeking an administrative payment) had been disallowed for payment by the Department. The date of IDPA's notice, the accrual date, initiated the running of the one-year limitation period during which the vendor was obligated to commence his Court action in respect to the previously invoiced services. Such accrual did not preclude the vendor from correcting his prior invoice errors or omissions by preparing a rebill invoice to IDPA within the time permitted by subsection (c)(2) of IDPA Rule 117.55; however, it is IDPA's position that the running of the one-year limitation period was not suspended, nor was the period extended in duration, as a result of the vendor's submittal of one or more rebill invoices.

Upon applying these statutory limitations to the accounts here challenged, the Court finds that the Court action had already been barred as to each of these two accounts when it was filed on May 16, 1983. In each instance, the vendor commenced his Court action more than one year following the respective dates on which IDPA had given written notice of its refusal to pay his administrative claims.

It is therefore hereby ordered that Respondent's motion to dismiss each of the accounts presented in Nos. 83-CC-2353, 83-CC-2354 and 83-CC-2355, on the grounds as addressed above in this opinion, is hereby

granted and said 25 accounts are each hereby dismissed with prejudice.